UNITED STATES DISRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ACCELERANT SPECIALTY INSURANCE
COMPANY,

                Plaintiff,

-against-

BIG APPLE DESIGNERS, INC,

                Defendant.
-------------------------------------------------------------------X

Civil Action No.
1:24-cv-7793

**COMPLAINT**

Plaintiff Accelerant Specialty Insurance Company ("ASIC"), by its attorneys Gerber Ciano Kelly Brady LLP as and for its Complaint against defendant Big Apple Designers, Inc ("Big Apple") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

2. Venue in this district is proper under 28 U.S.C.§ 1391 (b) (2) since a substantial part of the events giving rise to the claim occurred in this judicial district, and the underlying actions were brought in this district.

## THE PARTIES

3. ASIC is an insurance company incorporated under the laws of the State of Arkansas, with its principal place of business located at 400 Northridge Road, Sandy Springs, Georgia 30350.

4. Big Apple is a corporation organized under the laws of the State of New York, with its principal place of business located at 694 Myrtle Avenue, Brooklyn, New York 11205.

5. Big Apple was, and still is, engaged in the construction business in the State of New York.

## FACTUAL ALLEGATIONS

**The Insurance Application**

6. On or about June 8, 2022, Big Apple submitted a commercial insurance application seeking commercial general liability insurance ("Big Apple Application").

7. The Big Apple Application included the following question:

> 8. DURING THE LAST FIVE YEARS (TEN IN RI) HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD, BRIBERY, ARSON, OR ANY OTHER ARSON RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY?
>
> (In RI, this question must be answered by any applicant for property insurance. Failure to disclose the existence of an arson conviction is a misdemeanor publish, punishable by a sentence of up to one year of imprisonment).

8. In response to the above question on the Big Apple Application ("Question 8"), Big Apple marked "no" as the answer.

9. The Commercial Insurance Application contains a fraud warning, applicable in New York, which reads as follows:

> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME

>   AND SUBJECTS THE PERSON TO CRIMINAR AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, HI, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)

10. In that same portion of the Big Apple Application as well as in each and every portion of the Application, Big Apple affirmed that:

>   THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND CERTIFIES THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ONTHIS APPLICATION. HE/SHE CERTIFIES THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

11. The Commercial General Liability Section of the Big Apple Application contains a fraud provision specific to New York which reads:

>   **Applicable in KY, NY, OH and PA**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information  or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal  and civil penalties (not to exceed five thousand dollars and that stated value of the claim for each such violation)*. *Applies in NY Only.

12. The Application package also included the following statement which was included Feder's acknowledgment and signature:

>   **The applicant agrees, represents and warrants that the statements and information contained in this application for insurance, including all statements, information and documents accompanying or relating to this application are accurate and complete and no facts have been suppressed, omitted or misstated. Failure to fully disclose the information requested in this application for insurance, whether by omission or suppression, or any misrepresentation in the statements, information and documents accompanying or relating to this application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from its inception.**

13. The Umbrella/Excess Section of the Big Apple Application contains a Fraud Statement which reads:

> **Applicable in KY, NY, OH and PA**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information  or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal  and civil penalties (not to exceed five thousand dollars and that stated value of the claim for each such violation)*. *Applies in NY Only.

14. Before executing and signing the Umbrella/Excess Section of the Big Apple Application, Big Apple had to attest to the following:

> IMPORTANT- THE STATEMENTS (ANSWERS) GIVEN ABOVE ARE TRUE AND ACCURATE. THE APPLICANT HAS NOT WILLFULLY CONCEALED OR MISREPRSENTED ANY MATERIAL FACT OR CIRCUMSTANCE CONCERNING THIS APPLICATION. THIS APPLICATION DOES NOT CONSTITUTE A BINDER.

15. Solomon Feder ("Feder") signed the Big Apple Application on behalf of Big Apple on July 25, 2022.

16. Approximately and at least five (5) months prior to signing the Big Apple Application, both Feder and Big Apple were indicted for insurance fraud.

**Indictment**

17. On or about February 16, 2022, a group of defendants, including Feder, Big Apple, and others controlling or owning Big Apple were indicted and arraigned in the Supreme Court of the State of New York, County of New York in the matter of <u>The People Of The State of New York v. Solomon Feder, Chaim Leifer, Moshe "Moses" Weinberger, Carlos Santander, Big Apple Designers, Inc. Velocity Framers USA, Inc. CIS Construction LLC, and CIS Enterprises Corp.</u> pursuant to Indictment number, IND-70154-2022 ("Big Apple Indictment").

18. Pursuant to IND-70154-2022, Feder, Big Apple and others controlling or owning Big Apple were charged and indicted with Insurance Fraud First Degree, Conspiracy

4

Fourth Degree, and multiple counts of Falsifying Business Records First Degree ("Insurance Fraud Charges").

19. Feder and Big Apple were indicted pursuant to IND-7015402022 before June 8, 2022 in Supreme Court, New York County, Part 1.

20. Feder and Big Apple were arraigned pursuant to IND-7015402022 before June 8, 2022 in Supreme Court, New York County, Part 1.

21. Feder and Big Apple were charged and indicted with Conspiracy in the Fourth Degree when they engaged in a conspiracy to reduce Big Apple's insurance premium payments to the New York State Insurance Fund ("NYSIF").

22. Similar to ASIC, NYSIF used Big Apple's reported payroll to calculate its yearly premium payments.

23. The Big Apple Indictment alleges that to avoid paying higher premiums, Feder and Big Apple colluded with others to underreport employee payrolls by generating millions of dollars in unreported cash payroll.

24. As part of the Big Apple Indictment, it is alleged that Feder and Big Apple were part of a conspiracy to hand out envelopes containing cash to construction workers wearing a vest with a BIG APPLE logo as a form of payment so that neither the employees nor the payment would have to be reported.

25. The Big Apple Indictment alleges Feder and Big Apple issued numerous checks to CIS Construction and CIS Enterprises for the purpose of paying workers "off-the-books".

26. As part of the Big Apple Indictment, both Feder and Big Apple were charged with Insurance Fraud in the First Degree, in violation of New York Penal Law §176.30

5

27. New York Penal Law §176.30 states "A person is guilty of insurance fraud in the first degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of one million dollars."

28. The Big Apple Indictment charges among other things, that Big Apple committed a fraudulent insurance act and wrongfully took, obtained and withheld and attempted to wrongfully take, obtain, and withhold property with a value in excess of one million dollars from the New York State Insurance Fund.

29. The Big Apple Indictment charges Feder and Big Apple with Falsifying Business Records in the First Degree pursuant to Penal Law §175.10.

30. It is alleged that Feder and Big Apple intended to defraud and commissioned a false entry in business records from 2016 to 2018.

31. The Insurance Fraud Charges were not disclosed in response to Question 8 in the Big Apple Application.

32. The Insurance Fraud Charges were not disclosed anywhere in the Big Apple Application or at any time.

33. The Big Apple Indictment was not disclosed in response to Question 8 in the Big Apple Application.

34. The Big Apple Indictment was not disclosed anywhere in the Big Apple Application or at any time.

35. The Insurance Fraud charges and the Big Apple Indictment were never disclosed to ASIC before the Policy was underwritten.

36. Big Apple intentionally and knowingly withheld all information related to the indictment and charges in order to procure insurance coverage from ASIC.

**Insurance Policies**

37. Based upon and in reasonable reliance upon the information contained in the Big Apple Application, ASIC issued a Commercial General Liability policy, No. S0012GL00092000, with a policy period from July 24, 2022 to July 24, 2023, to Big Apple, as the sole Named Insured ("ASIC Policy").

38. Based upon and in reasonable reliance upon the information contained in the Big Apple Application, ASIC issued a Commercial Excess Liability policy, No. S0012XS00092100, with a policy period from July 24, 2022 to July 24, 2023, to Big Apple, as the sole Named Insured ("ASIC Excess Policy").

39. The ASIC Policy is included on the Schedule of Controlling Underlying Insurance of the ASIC Excess Policy.

40. The ASIC Policy contains the following definitions:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

41. The ASIC Policy contains the following policy condition:

> **6. Representations**
>
> By accepting this policy, you agree:
>
> **a.** The statements in the Declarations are accurate and complete;
>
> **b.** Those statements are based upon representations you made to us; and
>
> **c.** We have issued this policy in reliance upon your representations.

42. Had Feder and Big Apple answered the Application's questions truthfully and disclosed the existence and the information in the Big Apple Indictment, ASIC would not have issued the ASIC Policy or ASIC Excess Policy.

43. Feder and Big Apple's misrepresentations were material to ASIC's issuance of insurance policies to Big Apple.

44. If ASIC had known about Insurance Fraud Charges at the time of the Big Apple Application, ASIC would not have issued the ASIC Policy to Big Apple.

45. If ASIC had known about the Insurance Fraud Charges at the time of the Big Apple Application, ASIC would not have issued the ASIC Excess Policy to Big Apple.

46. If ASIC had known about the allegations in the Big Apple Indictment at the time of the Big Apple Application, ASIC would not have issued the ASIC Policy to Big Apple.

47. If ASIC had known about the allegations in the Big Apple Indictment at the time of the Big Apple Application, ASIC would not have issued the ASIC Excess Policy to Big Apple.

48. On November 27 2023, a disclaimer letter was issued to Defendant based on its material misrepresentation which declared the policies void ab initio.

49. The premium for the ASIC primary policy in the amount of $429,796.79 was returned to and accepted by Defendant.

50. The premium for the ASIC Excess Policy in the amount of $236,178.50 was returned to and accepted by Defendant.

51. By returning the premiums to Defendant, Plaintiff has restored the status quo ante existing between ASIC and Big Apple before the misrepresentations and omissions were

made by Big Apple that are at issue in this action, subject to ASIC's right to recover any amounts it paid to or on behalf of Big Apple under the policies.

**The Underlying Tort Actions**

52. In accordance with the terms of its disclaimer of coverage, Plaintiff agreed to provide Defendant with a courtesy defense in several tort actions where Big Apple was named as a defendant or third-party defendant (collectively "Underlying Actions").

53. On or about August 22, 2023, Jefferson Calle ("Calle") commenced an action entitled <u>Jefferson Calle v. Yatziv Corp. and P and 21 LLC</u>, Index No. 812938/2023E, In the Supreme Court of the State of New York, County of Bronx ("Calle Action").

54. In the Calle Action, Calle alleges that he suffered bodily injury on or about February 22, 2023, in the course of his employment at a construction project located at 2108-2122 Avenue P, Brooklyn, New York.

55. In the Calle Action, P and 21 LLC impleaded Big Apple as a third-party defendant.

56. On or about October 27, 2022, Jorge Rodrigo Pani-Quizhpi ("Quizhpi") commenced an action entitled <u>Jorge Rodrigo Pani-Quizhpi v. Park Management USA Corp., Everbuilt NYC LLC, Yatziv Corp. and Bless East 28 LLC</u>, Index No. 531292/2022, In the Supreme Court of the State of New York, County of Kings ("Quizhpi Action").

57. In the Quizhpi Action, Quizhpi alleges that he suffered a bodily injury on or about August 18, 2022, in the course of his employment at a construction project located at 641 E. 28th Street, Brooklyn, New York.

58. In the Quizhpi Action, Park Management USA Corp. and Bless East 28 LLC impleaded Big Apple as a third-party defendant.

59. On or about November 14, 2022, Elin J. Oyuela-Delgado ("Oyuela") commenced an action entitled <u>Elin J. Oyuela-Delgado v. Twin Group Associates Inc. and 1010 Pacific Owner LLC</u>, Index No. 53322/2022, in the Supreme Court of the State of New York, County of Kings ("Oyuela Action").

60. In the Oyuela Action, Oyuela alleges that he suffered a bodily injury on or about August 9, 2022, in the course of his employment on a construction project located at 1010 Pacific Street, Brooklyn, New York 11238.

61. In the Oyuela Action, Twin Group Associates Inc. and 1010 Pacific Owner LLC impleaded Big Apple as a third-party defendant.

62. On or about January 5, 2023, Julia Elisa Vera Reyes ("Reyes") commenced an action entitled <u>Julia Elisa Vera Reyes v. Omnibuild Construction Inc. and QB Development Owner LLC</u>, Index No. 500469/2023, in the Supreme Court of the State of New York, County of Kings ("Reyes Action").

63. In the Reyes Action, Reyes alleges that she suffered bodily injury on or about October 20, 2022, in the course of her employment on a construction project located at 69-02 Queens Boulevard, Woodside, New York.

64. In the Reyes Action, Twin Group Associates Inc. and 1010 Pacific Owner LLC impleaded Big Apple as a third-party defendant.

65. On or about January 26, 2023, Kevin Ismael Ruilova Rodriguez ("Rodriguez") commenced an action entitled <u>Kevin Ismael Ruilova Rodriguez v. Omnibuild Construction Inc. and TMHCR 48th Street LLC</u>, Index No. 503054/2023, in the Supreme Court of the State of New York, County of Kings ("Rodriguez Action").

66. In the Rodriguez Action, Rodriguez alleges that he suffered bodily injury on or about November 14, 2022, in the course of his employment on a construction project located at 150 48th Street, New York, New York.

67. In the Rodriguez Action, Omnibuild Construction Inc. and TMHCR 48th Street, LLC impleaded Big Apple as a third-party defendant.

68. On or about January 30, 2023, Jessica Alexandra Abarca Fajardo ("Jessica Fajardo") commenced an action entitled <u>Jessica Alexandra Abarca Fajardo v. Archer 1 LLC, Shorewood Real Estate Group LLC and M&R Construction Group Inc.</u>, Index No. 150919/2023, in the Supreme Court of the State of New York, County of New York ("Jessica Fajardo Action")

69. In the Jessica Fajardo Action, Jessica Fajardo alleges that she suffered bodily injury on or about August 19, 2022, in the course of her employment at a construction project located at 160-05 Archer Avenue, Jamaica, New York.

70. In the Jessica Fajardo Action, Archer 1, LLC, Shorewood Real Estate Group LLC and M&R Construction Group (collectively "Archer Defendants") impleaded Big Apple.

71. In the Jessica Fajardo Action, the Archer Defendants impleaded ASIC seeking coverage as additional insureds under the ASIC Policy based upon a contractual obligation of Big Apple.

72. On or about January 31, 2023, Diego Hormiga Gomez ("Gomez") commenced an action entitled <u>Diego Hormiga Gomez v. Archer 1 LLC, Shorewood Real Estate Group LLC and M&R Construction Group Inc.</u>, Index No. 150951/2023, in the Supreme Court of the State of New York, County of New York ("Gomez Action").

73. In the Gomez Action, Gomez alleges that he suffered a bodily injury on or about September 20, 2022, in the course of his employment at a construction project located at 2455 McDonald Avenue, 2nd Floor, Brooklyn, New York.

74. In the Gomez Action, Archer 1, LLC, Shorewood Real Estate Group, LLC and M&R Construction Group Inc. impleaded Big Apple as a third-party defendant.

75. On or about February 1, 2023, Jinpson Fajardo-Landivar ("Landivar") commenced an action entitled <u>Jinpson Fajardo-Landivar v. M&R Construction Group Inc. and Archer 1 LLC</u>, Index No. 702401/2023, in the Supreme Court of the State of New York, County of Queens ("Landivar Action").

76. In the Landivar Action, Landivar alleges that he suffered a bodily injury on or about November 3, 2022, in the course of his employment at a construction project located at 160-05 Archer Avenue, Queens, New York.

77. In the Landivar Action, M&R Construction Group Inc. and Archer 1 LLC impleaded Big Apple as a third-party defendant.

78. On or about February 13, 2023, Pablo Fabian Rueda Uquillas ("Uquillas") commenced an action entitled <u>Pablo Fabian Rueda Uquillas v. Yatziv Corp. and P and 21 LLC</u>, Index No. 504647/2023, in the Supreme Court of the State of New York, County of Kings ("Uquillas Action").

79. In the Uquillas Action, Uquillas alleges that he suffered a bodily injury on or about January 3, 2023, in the course of his employment at a construction project located at 2112 Avenue P, Brooklyn, New York.

80. In the Uquillas Action, P and 21 LLC impleaded Big Apple as a third-party defendant.

81. On or about March 27, 2023, Pedro Remigio Marquez Yunga ("Yunga") commenced an action entitled <u>Pedro Remigio Marquez Yunga v. Archer 1 LLC, M&R Construction Group Inc and Core Scaffold Systems Inc.</u>, Index No. 509188/2023, in the Supreme Court of the State of New York, County of Kings ("Yunga Action").

82. In the Yunga Action, Yunga alleges that he suffered bodily injury on or about March 20, 2023, in the course of his employment at a construction project located at 92-27 160th Street a/k/a 160-05 Archer Avenue, Queens, New York.

83. In the Yunga Action, M&R Construction Group Inc. ("M&R") impleaded Big Apple as a third-party defendant.

84. On or about August 21, 2023, Manuel Torres Orellana ("Orellana") commenced an action entitled <u>Manuel Torres Orellana v. P and 21 LLC and Yatziv Corp.</u>, Index No. 524242/2023, in the Supreme Court of the State of New York, County of Kings ("Orellana Action").

85. In the Orellana Action, Orellana alleges that he suffered bodily injury on or about January 23, 2023, in the course of his employment at a construction project located at 2108-2112 Avenue P. Brooklyn, New York.

86. In the Orellana, P and 21 LLC impleaded Big Apple as a third-party defendant.

87. ASIC disclaimed coverage to Big Apple in all actions, claims and litigations falling within the ASIC policy period based on the misrepresentation and therefore, ASIC owes no duty to defend Big Apple.

88. ASIC's courtesy defense to Big Apple in the Underlying Actions can be terminated at any time without any judicial declaration.

## AS AND FOR A FIRST CLAIM FOR RELIEF
**(Breach of Policies – Declaratory Relief)**

89. ASIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "88" of this Complaint as more fully set forth herein.

90. By accepting the ASIC Policy and ASIC Excess Policy, Big Apple represented the statements in the Policies' Declarations and those statements made to ASIC were accurate, true and correct.

91. Big Apple breached the Policies' contractual terms by providing statements that were false, incomplete, inaccurate, untruthful and including material misrepresentations to ASIC, upon which ASIC relied in having issued the ASIC Policy and ASIC Excess Policy.

92. ASIC continues to incur damages and will continue to incur damages as a result of Big Apple's affirmative misrepresentations and misrepresentations by omission.

93. Despite the material misrepresentations made and the disclaimer issued, Big Apple refuses to retain counsel and fund its own defense in the tort actions.

94. ASIC seeks a declaration that it is no longer obligated to defend Big Apple in any litigation where ASIC agreed to provide a courtesy defense or others that may or may have occurred during the ASIC Policy periods.

95. ASIC seeks a declaratory judgment as to Big Apple's responsibilities for such damages that will happen but are not currently quantifiable.

96. As a result of the foregoing, ASIC seeks a declaratory judgment that (i) ASIC owes no obligation under any policy of insurance based on breach of the Policies; (ii) Big Apple is responsible for reimbursing all monies that ASIC incurs for the defense of Big Apple in the Underlying Actions; (iii) reimbursing all monies ASIC incurs in responding to actions asserting claims for coverage for purported additional insureds in connection with the Underlying Actions;

and (iv) reimbursing all monies that ASIC incurs in responding to claims of coverage for Big Apple for the Underlying Actions.

### AS AND FOR A SECOND CLAIM FOR RELIEF
**(Declaratory Relief – Policy Rescission)**

97. ASIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "96" of this Complaint as more fully set forth herein.

98. In the Big Apple Application, Feder affirmed, on behalf of Big Apple, that neither Big Apple nor any other applicant as part of the Big Apple Application had been indicted for fraud within the five years prior signing the Big Apple Application ("Representation").

99. The Representation by Feder and Big Apple was false because, pursuant to the charges in the Big Apple Indictment, both Feder and Big Apple had been indicted for insurance fraud five months prior to completing the Big Apple Application, well within the five-year time period set out in Question 8.

100. The Big Apple Application was sent to ASIC by Feder and Big Apple to induce ASIC to issue insurance to Big Apple.

101. Upon information and belief, Big Apple failed to provide accurate answers on the Application to induce ASIC into issuing the Policies.

102. Upon information and belief, Big Apple may have made additional material misrepresentations in the Application that will be revealed in discovery.

103. The Representation by Feder and Big Apple resulted in ASIC issuing the ASIC Policy and the ASIC Excess Policy to Big Apple.

104. Had ASIC known the true circumstances concerning Big Apple and Feder's indictment, ASIC would not have issued the ASIC Policy to Big Apple if ASIC had known about the Insurance Fraud Charges.

105. ASIC would not have issued the ASIC Excess Policy to Big Apple if ASIC had known about the Insurance Fraud Charges.

106. ASIC would not have issued the ASIC Policy to Big Apple if ASIC had known about the Big Apple Indictment.

107. ASIC would not have issued the ASIC Excess Policy to Big Apple if ASIC had known about the Big Apple Indictment.

108. Because of the Feder and Big Apple's material misrepresentations in the Big Apple Application, ASIC is entitled to rescind the ASIC Policy and the ASIC Excess Policy *ab initio* pursuant to its terms and N.Y. Insurance Law §3105.

109. As a consequence of the material misrepresentation and omission of material facts communicated by Big Apple to Plaintiff as described in this Complaint, Plaintiff is entitled to a declaration that the Policies are void *ab initio,* rescinded and that there is no coverage for any claims made against Big Apple or any other insured under the Policies, including but not limited to the claims against Big Apple in the Underlying Actions.

110. ASIC has no adequate remedy at law.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**(Unjust Enrichment- Monetary Damages)**

111. ASIC repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" thorough "110" of this Complaint as more fully set forth herein.

112. Big Apple purchased the ASIC Policy and the ASIC Excess Policy as the Named Insured.

113. ASIC issued the ASIC Policy and the ASIC Excess Policy based upon the representations made by Feder and Big Apple in the Big Apple Application.

114. At all of the aforementioned times, Feder was acting as the authorized representative of Big Apple in signing the Big Apple Application.

115. Feder and Big Apple made the following material misrepresentations to ASIC in the Big Apple Application:

    a. Big Apple had not been indicted for fraud within the five years prior to signing the Big Apple Application; and

    b. No other applicant, including but not limited to Feder, had been indicted for fraud within the five years prior to signing the Big Apple Application.

116. Feder and Big Apple made a misrepresentation by material omission in failing to advise ASIC in the Big Apple Application about the Insurance Fraud Charges and the Big Apple Indictment.

117. At the time Feder and Big Apple made the material misrepresentations in the Big Apple Application, they knew or should have known that they were false.

118. Feder and Big Apple made the aforementioned affirmative misrepresentations and misrepresentations by omission to induce ASIC to issue the ASIC Policy and the ASIC Excess Policy to Big Apple.

119. ASIC, in justifiable reliance upon the misrepresentations in the Big Apple Application, issued the ASIC Policy and the ASIC Excess Policy.

120. As a result of the foregoing, ASIC suffered monetary damages, including damages caused by (i) paying for the defense of Big Apple in the Underlying Actions identified

and others that may exist; (ii) the paying for the defense and other costs of ASIC in actions in responding to the claims for coverage for purported additional insureds of Big Apple for the Underlying Actions; and (iii) the paying for the defense and other costs of ASIC in responding to the claims of coverage for Big Apple in the Underlying Actions.

121. In addition, ASIC returned the premium to Big Apple which has been received and accepted by Big Apple in exchange for a declaration that the ASIC Policy and the ASIC Excess Policy were void *ab initio.*

122. ASIC is therefore entitled to a return of the premium, in addition to, or as a set off to the amount of the fees and costs paid to date.

123. The actual damages sought in this action exceed $75,000.

**WHEREFORE,** Plaintiff ACCELERANT SPECIALTY INSURANCE COMPANY demands judgment as follows:

A. On the First Claim for relief against Defendant Big Apple Designers, Inc, a declaration that Defendant breached the ASIC Policy and ASIC Excess Policy and in doing so, ASIC owes no coverage for any claim alleged against Big Apple, that Big Apple must return the premiums to ASIC, as well as costs incurred to date and interest to be determined by the Court, plus interest;

B. On the Second Claim for relief, a declaratory judgment determining the ASIC Policy and ASIC Excess Policy are rescinded and void *ab initio* and in doing so, order and declare that Defendant Big Apple Designers, Inc. is responsible for (i) reimbursing all monies that Plaintiff incurs for the defense of Big Apple Designers, Inc. in the Underlying Actions; (ii) reimbursing all monies that Plaintiff incurs in responding to actions asserting claims for coverage

for purported additional insureds in connection with the Underlying Actions; as well as (iii) costs, fees and interest.

    C. On the Third Claim for relief, a declaration that the ASIC Policy and the ASIC Excess Policy are **rescinded** and **void** *ab initio*; that ASIC has no obligation to defend or **indemnify** Big Apple Designers, Inc. or any other party seeking coverage under the ASIC Policy or the ASIC Excess Policy, including but not limited to the Underlying Actions; ASIC is entitled to a return of the premiums reimbursed to Big Apple in addition to fees and costs paid; and

    D. Granting Plaintiff recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: November 8, 2024

GERBER CIANO KELLY BRADY LLP

By:  */s/ Joanna M. Roberto*
   _____
Joanna M. Roberto
Attorneys for Plaintiff
Accelerant Specialty Insurance Company
1325 Franklin Avenue, Suite 500
Garden City, New York 11530
F: 1566.0014
T: (516) 329-9403
E: jroberto@gerberciano.com
