UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ACCELERANT SPECIALTY INSURANCE COMPANY,

                *Plaintiff*,

  -against-

BIG APPLE DESIGNERS, INC.,

                *Defendant*.

24-CV-7793 (ARR) (RML)

**OPINION & ORDER**

---

In the present action, plaintiff Accelerant Specialty Insurance Company ("Accelerant") seeks a declaratory judgment against defendant Big Apple Designers, Inc. ("Big Apple"), declaring that the insurance policies issued by Accelerant to Big Apple are invalid and do not create a duty for Accelerant to defend or indemnify Big Apple in several personal injury actions currently pending in New York State Supreme Court.

Before me now is Big Apple's fully briefed motion for judgment on the pleadings. *See* Big Apple's Mot. for J. on the Pleadings ("Mot."), ECF No. 40; Accelerant's Mem. in Opp. ("Opp."), ECF No. 41; Big Apple's Reply ("Rep."), ECF No. 43. For the reasons set forth below, I DENY Big Apple's motion.

## BACKGROUND

### I. Factual Background[1]

On or about June 8, 2022, Big Apple submitted an insurance application to Accelerant. Among other questions, Big Apple was asked to answer the following:

> DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD,

---

[1] In considering the instant motion, I accept as true the factual allegations in Accelerant's Complaint. *See Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178 (2d Cir. 2013).

> BRIBERY, ARSON OR ANY OTHER ARSON-RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY?
> (In RI, this question must be answered by any applicant for property insurance. Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment).

Commercial Insurance Application, Decl. of Joanna M. Roberto, Ex. A, ECF No. 42-1 ("Ins. App."). Big Apple answered that question in the negative. *Id*.

Approximately five months earlier, on February 16, 2022, Big Apple and certain of its controllers and owners were indicted in New York State Court for insurance fraud, conspiracy, and falsification of business records (the "Fraud Indictment"). Compl. ¶¶ 17–18. The Fraud Indictment alleged that Big Apple, in collusion with other parties, underreported employee payrolls by making direct cash payments to its employees, thereby reducing Big Apple's insurance premium payments to the New York State Insurance Fund. *Id*. ¶¶ 21–25. According to Accelerant, Big Apple's failure to disclose the Indictment in Big Apple's insurance application was a material misrepresentation. *Id.* ¶¶ 115–18.

After reviewing Big Apple's application for insurance, Accelerant issued a Commercial General Liability policy (the "CGL Policy") and a Commercial Excess Liability policy (the "Excess Policy," and together with the CGL Policy, the "Accelerant Policies") to Big Apple. *Id.* ¶¶ 37–38; Ex. E, CGL Policy, ECF No. 22-6; Ex. F, Excess Policy, ECF No. 22-7. Both policies were effective from July 24, 2022 to July 24, 2023. Compl. ¶¶ 37–38.

From October 2022 to August 2023, Big Apple was named or added as a defendant in twelve personal injury actions (the "Underlying Actions"). *Id.* ¶¶ 52–88. Big Apple was impleaded as a defendant in each action, where each plaintiff alleges that they were injured during the course of their employment at various construction projects in New York. *Id*. On November 27, 2023, Accelerant issued a disclaimer letter to Big Apple, claiming that the

2

insurance policies were *void ab initio* based on Big Apple's allegedly material misrepresentation on its insurance application. *Id.* ¶ 48.

## II. Procedural History

Accelerant commenced the instant action on November 8, 2024. The complaint asserts three claims for relief. First, Accelerant claims that Big Apple breached the Accelerant Policies by providing material misrepresentations in its application for insurance, and seeks a declaratory judgment that it owes no obligation to Big Apple under the policies. Compl. ¶¶ 89–96. Second, Accelerant claims that it is entitled to rescission of the Accelerant Policies based on the material misrepresentations in Big Apple's application for insurance, and seeks a declaratory judgment that the Accelerant Policies are *void ab initio*. *Id*. ¶¶ 97–110. Third, Accelerant asserts a claim for unjust enrichment against Big Apple, on the basis that Big Apple's misrepresentations in its application for insurance induced Accelerant to issue the Accelerant Policies. *Id*. ¶¶ 111–23.

On June 10, 2025, Big Apple submitted the instant motion for judgment on the pleadings. Mot. at 1.

## DISCUSSION

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Judgment on the pleadings is "appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 507 (2d Cir. 2009). "Thus, a court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to

3

weigh disputed factual allegations." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021). "[O]n a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Id*. at 306 (emphasis omitted).

"Under New York law, an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations." *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir. 2008). "A misrepresentation in an application for insurance is defined as a false 'statement as to past or present fact, made to the insurer by . . . the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof.'" *Id.* (quoting N.Y. Ins. Law § 3105(a)). "A policy may also be rescinded by the insurer 'if the insured fraudulently concealed from or misrepresented a material fact to the insurer at the time the policy was issued.'" *Id.* (quoting *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir.1989)).

**I.      Interpretive Principles**

"The initial interpretation of a contract is a matter of law for the court to decide." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quotations marks omitted and alterations adopted). "When the provisions [of an insurance contract] are unambiguous and understandable, courts are to enforce them as written. *Id.* Whether an insurance application is ambiguous presents a "threshold question of law to be determined by the court." *Id.* (quotation marks omitted). A question is unambiguous "when it has a definite and precise meaning, unattended by danger of misconception in the purport of the

4

[contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Care Travel Co., Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983, 988 (2d Cir. 1991) (quotation marks and citations omitted). The language "must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012). Where the provision is "clear and unambiguous, [it] must be given [its] plain and ordinary meaning." *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 220 (2d Cir. 2021). However, if "a reasonable person in the insured's position could rationally have interpreted the question as he or she did," then the question is ambiguous and must be interpreted in favor of the insured. *Lee*, 2023 WL 7014138, at *2 (quotation marks omitted). Critically, the "'reasonable person' standard is an objective one," and the court is "not required to determine the [insured's] subjective views on the question." *Id*. at *3 (collecting cases).

As a preliminary matter, the parties disagree on the interpretive principles that govern insurance applications. Big Apple contends that "[i]nsurance applications are subject to similar interpretive standards as insurance policies," and therefore ambiguities in the language of an application "must be construed against Accelerant as the insurer and in Big Apple's favor as the insured." Mot. at 6 (citing *Lee v. Union Mut. Fire Ins. Co.*, No. 20-CV-3191, 2022 WL 3370086, at *7 (E.D.N.Y. Aug. 16, 2022) (applying principles of "insurance contract" interpretation to interpretation of an insurance policy application), *aff'd*, No. 22-3142-CV, 2023 WL 7014138 (2d Cir. Oct. 25, 2023)). Accelerant responds that "insurance applications are interpreted using the same canons of construction that generally apply to any written instrument or statute." Opp. at 6–7.

5

Big Apple has the better of the argument. Although Accelerant complains that Big Apple cites only "a single district court decision that seemingly supports [its] proposition" that insurance applications are subject to similar interpretive standards as insurance policies, Accelerant cites *no* court decisions in support of its contrary standard. *Id*. More importantly, New York law is clear that "[a]n insurer is held to a strict standard when it is endeavoring to avoid payment on its insurance contract because of answers to inquiries or declarations which it has framed." *Fanger v. Manhattan Life Ins. Co. of New York, N.Y.*, 273 A.D.2d 438, 439 (N.Y. App. Div. 2d Dep't 2000). As the Second Circuit has explained, New York law interprets insurance contracts in favor of the insured and resolves all ambiguities against the insurer, and that rule "applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations." *Vella v. Equitable Life Assur. Soc. of U.S.*, 887 F.2d 388, 391–92 (2d Cir. 1989). Thus, "an answer to an ambiguous question on an application for insurance cannot be the basis of a claim of misrepresentation by the insurance company against its insured where . . . a reasonable person in the insured's position could rationally have interpreted the question as he or she did." *Lee v. Union Mut. Fire Ins. Co.*, No. 22-CV-3142, 2023 WL 7014138, at *2 (2d Cir. Oct. 25, 2023) (quotation marks omitted and alterations adopted). Accordingly, I must construe ambiguities in the language of the insurance application against Accelerant as the insurer and in Big Apple's favor as the insured.

**II.    Interpretation of the Question**

Question 8 of the Application asks whether "any applicant [has] been indicted for or convicted of any degree of the crime of fraud, bribery, arson or any other arson-related crime in connection with this or any other property." Ins. App. at 3. The parties' principal dispute centers around the effect of the final modifying clause "in connection with this or any other property."

6

Big Apple asserts that the clause modifies all four of the preceding crimes—"fraud, bribery, arson or any other arson-related crime"—whereas Accelerant asserts that the clause modifies only "arson-related crime." To determine whether a "modifier at the beginning or end of a series of terms modifies all the terms," courts have applied two contradictory rules: the "last antecedent rule or the series qualifier canon." *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014), *aff'd*, 577 U.S. 347 (2016).

The most obvious method "which a writer indicates whether a modifier that follows a list of nouns or phrases is intended to modify the entire list, or only the immediate antecedent, is by punctuation." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781–82 (2d Cir. 2013). "When there is no comma, . . . the subsequent modifier is ordinarily understood to apply only to its last antecedent." *Id*. at 782. In other words, "[u]nder the rule of the last antecedent, a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,* 651 F.3d 329, 335 (2d Cir. 2011) (quotation marks and alterations adopted). But when "a comma is included, . . . the modifier is generally understood to apply to the entire series." *Am. Int'l Grp., Inc.*, 712 F.3d at 782.

However, those conventions are "not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003). Although Question 8 does not separate the clause "in connection with this or any other property" with a comma from the listed crimes, Ins. App. at 3, Question 8 bears sufficient contrary "indicia of meaning" such that "a reasonable person in the insured's position could rationally have interpreted the [clause]" to modify all of the preceding crimes. *Lee*, 2023 WL 7014138, at *2 (2d Cir. Oct. 25, 2023) (quotation marks omitted). "Fastidious use of punctuation is a virtue in a drafter and often

7

commands respect," but the absence of the comma does not mandate application of the last antecedent rule. *See Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 271-72 (2d Cir. 2015). Indeed, Question 8 is immediately followed by a parenthetical that states, "[i]n RI, this question must be answered by any applicant for property insurance. Failure to disclose the existence of an arson conviction is a misdemeanor . . . ." Ins. App. at 3. "[A] reasonable person in the insured's position could rationally have interpreted" this parenthetical to suggest that Question 8 sought disclosure of property-related crimes. *Lee*, 2023 WL 7014138, at *2.

Applying the "series-qualifier canon," the Supreme Court has observed that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402, 403 (2021) (quotation marks omitted and alterations adopted) (collecting cases). Application of the series-qualifier canon in such circumstances does not conflict with the "rule of the last antecedent." *Id.* at 404. Here, the modifying clause follows "any degree of the crime of fraud, bribery, arson or any other arson-related crime," which is an integrated list of crimes. Ins. App. at 3. Accordingly, the clause "in connection with this or any of other property" would apply to all crimes delineated in Question 8.

Furthermore, Accelerant has failed to identify any reason why Question 8 would apply the "in connection with this or any other property" clause to "arson-related crime" alone. In other words, it has not provided an argument as to why it would take a more restrictive approach in its consideration of the crime of arson versus the crimes of fraud and bribery. "The series qualifier canon generally prevails when, as is true here, there is no reason consistent with any discernible purpose of the [text] to apply the limiting phrase to the last antecedent alone." *In re Soussis*, 136 F.4th 415, 432 n.21 (2d Cir. 2025) (quotation marks omitted). Moreover, there is no discernable

8

reason why the limiting clause would modify "arson-related crime" without also modifying "arson," as the two categories are, by definition, "related." Ins. App. at 3. Because there is no interpretive canon by which a modifying clause applies to only the two nearest antecedents in a list, the most natural reading of Question 8 is that the "in connection with this or any other property" clause modifies all four of the listed crimes.

Accelerant's remaining argument is unpersuasive. Accelerant contends that because (1) the Application was for a general commercial liability policy, (2) Question 8 "was located in a section titled 'General Information,'" and (3) the surrounding questions made broad inquiries into the applicant's business history, a "reasonable businessperson would understand [that] the Application sought information related to the general risks associated with insuring the applicant." Opp. at 7. Since "any indictment or conviction for fraud is" relevant to the general risks of insuring the applicant, Accelerant asserts that Question 8 unambiguously sought disclosure of all fraud crimes, not just those "associated with real property." *Id*. at 7–8.

However, Question 8 and the remaining "General Information" questions were not tailored to general commercial liability policies, and instead were part of a form application used for over twenty different types of policies. Ins. App. at 2. Moreover, the broad scope of the other "General Information" questions cannot contradict the specific limiting language of Question 8. Question 8 asked for disclosure of crimes "in connection with this or any other property," *id*. at 3, and an applicant for insurance is not required to infer the broad scope of the insurer's intended disclosures from ambiguous clues. To the contrary, the "insurer is held to a strict standard when it is endeavoring to avoid payment on its insurance contract because of answers to inquiries or declarations which it has framed." *Fanger*, 273 A.D.2d at 439.

9

For the foregoing reasons, I agree with Big Apple that Question 8 plainly requires disclosure of an indictment or conviction for a listed offense only if that offense was "in connection with this or any other property." Ins. App. at 3. Even if the question were closer, at minimum, "a reasonable person in the insured's position could rationally have interpreted as he or she did." *Lee*, 2023 WL 7014138, at *2 (quotation marks omitted). Since ambiguous questions in an insurance application are construed against the insurer, *see Vella*, 887 F.2d at 392, Big Apple's interpretation would remain controlling.

### III.  Answer to Question 8

Nonetheless, I agree with Accelerant that its complaint still alleges a plausible claim even if Big Apple's interpretation of the insurance application is correct. Opp. at 10–11. Big Apple assumes that "property" is limited to real property, *i.e.* Big Apple's premises and job locations. Mot at 9–10. According to Big Apple, its use of cash payments to mask its payroll, and thereby decrease its insurance premiums, was not in connection with any of its real properties. *Id.* at 10.

However, I cannot conclude at this stage that Question 8 was limited to frauds "in connection with . . . [real] property." Ins. App. at 3. Question 8 fails to define the terms "this or any other property." *Id.* at 3. Nor does the rest of the application shed light on that question. Although Question 8 might refer to the "premises" being insured (here, "all job locations" operated by Big Apple), the Application does not equate, or even link, the terms "premises" and "property." *See id.* at 1.

Property is an extraordinarily broad concept, and encompasses interests far removed from real property. *See, e.g.*, *Carpenter v. United States*, 484 U.S. 19, 25 (1987) (holding that the "intangible nature" of certain property rights or interests "does not make it any less 'property' protected by the mail and wire fraud statutes"). Indeed, "money is property." *Republic of*

10

*Hungary v. Simon*, 145 S. Ct. 480, 495 (2025). Thus, Big Apple's unreported cash payments to its workers—the basis of the Fraud Indictment—may satisfy the "in connection with . . . property" qualifier as used in Question 8.

In sum, I am unable to determine at this stage whether Big Apple truthfully answered Question 8 by nondisclosure of the Fraud Indictment. Whether the Fraud Indictment was a "fraud in connection with this or any other property" must be understood in light of the "customs, practices, usages and terminology as generally understood in the particular trade or business." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quotation marks omitted). Moreover, discovery may reveal "extrinsic evidence," which I may use to "ascertain the meaning intended by the parties during the formation of the contract." *Id*. at 43 (quotation marks omitted).

I therefore DENY Big Apple's motion for judgment on the pleadings.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:     August 15, 2025
           Brooklyn, New York