UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ACCELERANT SPECIALTY INSURANCE COMPANY,

*Plaintiff,*

-against-

BIG APPLE DESIGNERS, INC.,

*Defendant.*

24-CV-7793 (ARR) (RML)

**OPINION & ORDER**

In the present action, plaintiff Accelerant Special Insurance Company ("Accelerant") seeks a declaratory judgment against defendant Big Apple Designers, Inc. ("Big Apple"), declaring that the insurance policies issued by Accelerant to Big Apple are invalid and do not create a duty to defend or indemnify Big Apple in several personal injury actions currently pending in New York State Supreme Court. Before me now is a motion to intervene by M&R Construction Group, Inc. ("M&R") and Continental Indemnity Company ("Continental," and together with M&R, the "Intervenors"). Mot. to Int. ("Mot."), ECF No. 22-1. M&R is a defendant in at least one of the underlying personal injury actions, and asserts that it is entitled to coverage from Accelerant as an additional insured. *Id.* at 1. Continental is M&R's insurer, and seeks reimbursement and contribution from Accelerant of defense costs that Continental has paid on M&R's behalf. *Id.* at 1. For the reasons set forth below, I GRANT the motion to intervene.

BACKGROUND

**I.    Factual Background**[1]

---

[1] In considering the instant motion, I accept as true the factual allegations in Accelerant's Complaint. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

On or about June 8, 2022, Big Apple submitted an insurance application to Accelerant. Among other questions, Big Apple was asked to answer the following:

> During the last five years . . . has any applicant been indicted for or convicted of any degree of the crime of fraud, bribery, arson, or any other arson related crime in connection with this or any other property?

Compl. ¶ 7. Big Apple answered that question in the negative. *Id*. ¶ 8.

Approximately five months earlier, on February 16, 2022, Big Apple and certain of its controllers and owners were indicted and arraigned for insurance fraud, conspiracy, and falsification of business records. *Id*. ¶¶ 17–18. The indictment alleged that Big Apple, in collusion with other parties, underreported employee payrolls through direct cash payments to its employees, thereby reducing Big Apple's insurance premium payments to the New York State Insurance Fund. *Id*. ¶¶ 21–25. According to Accelerant, Big Apple's failure to disclose the Indictment in Big Apple's insurance application was a material misrepresentation.

After reviewing Big Apple's application for insurance, Accelerant issued a Commercial General Liability policy (the "CGL Policy") and a Commercial Excess Liability policy (the "Excess Policy," and together with the CGL Policy, the "Accelerant Policies") to Big Apple. *Id.* ¶¶ 37–38; Ex. E, CGL Policy, ECF No. 22-6; Ex. F, Excess Policy, ECF 22-7. Both policies were effective from July 24, 2022 to July 24, 2023. Compl. ¶¶ 37–38

On November 27, 2023, Accelerant issued a disclaimer letter to Big Apple, claiming that the policies were *void ab initio*. Complaint ¶ 48. Prior to Accelerant's disclaimer of coverage, Big Apple was named or added as a defendant in twelve personal injury actions (the "Underlying Actions"). *Id*. ¶¶ 52–88. Each of those actions alleges that the plaintiff was injured in the course of their employment at various construction projects in New York during the effective period of

the Accelerant Policies. *Id*. Accelerant is currently providing Big Apple defense coverage under the Accelerant Policies in the Underlying Actions in accordance with the terms of its disclaimer of coverage. *Id*. ¶ 52.

As relevant here, one of those actions is *Pedro Remigo Marquez Yunga v. M&R Construction Group Inc. et al*, Index No. 509188/2023, New York Sup. Ct. Kings County (the "Yunga Action"). *Id*. ¶ 81. There, the plaintiff sued M&R, alleging that he suffered bodily injury in the course of his employment at a construction project, and M&R impleaded Big Apple as a third-party defendant. *Id*. ¶¶ 82–83. M&R hired Big Apple as its subcontractor for the construction project in which the Yunga Action plaintiff claims he was injured. Mot. at 2. M&R sought coverage under the Accelerant Policies in the Yunga Action as an additional insured, *id*. at 4, pursuant to a provision in those policies that extended coverage "[a]s required by written contract executed by both parties prior to loss," Ex. E, CGL Policy at 31. Accelerant refused to provide coverage to M&R, claiming that the Accelerant Policies were rescinded due to Big Apple's misrepresentations. Mot. at 4. As a result, M&R's primary insurer, Continental, has borne the entirety of M&R's defense expenses in the Yunga Action. *Id*.

On November 15, 2024, M&R and Continental filed a declaratory judgment action against Big Apple and Accelerant in New York State Supreme Court, County of Queens. *See* Ex. H, State Court Pleadings, ECF No. 22-9. In that action, M&R sought declarations that Accelerant owed a duty to defend and indemnify M&R under the Accelerant Policies in the Yunga Action. *Id.* at 10–11. Continental also sought declarations that Accelerant was required to contribute to the defense and indemnification of M&R in the Yunga Action, and to reimburse Continental's past expenses for that purpose. *Id*.

**II.    Procedural History**

3

Accelerant commenced the instant action on November 8, 2024. The complaint asserts three claims for relief. First, Accelerant claims that Big Apple breached the Accelerant Policies by providing material misrepresentations in its application for insurance, and seeks a declaratory judgment that it owes no obligation to Big Apple under the policies. Compl. ¶¶ 89–96. Second, Accelerant claims that it is entitled to rescission of the Accelerant Policies based on the material misrepresentations in Big Apple's application for insurance, and seeks a declaratory judgment that the Accelerant Policies are *void ab initio*. *Id*. ¶¶ 97–110. Third, Accelerant asserts a claim for unjust enrichment against Big Apple, on the basis that Big Apple's misrepresentations in its application for insurance induced Accelerant to issue the Accelerant Policies. *Id*. ¶¶ 111–23.

On February 28, 2025, Big Apple filed its answer to Accelerant's complaint. Answer, ECF No. 21.

On February 28, 2025, M&R and Continental filed a motion to intervene in this action. Mot. at 1. Intervenors state that, if permitted to intervene, they will assert the following counterclaims against Accelerant:

1. A declaration that Accelerant's rescission of the CGL Policy and the Excess Policy was improper, and that said policies remain in full force and effect;
2. A declaration that M&R is an additional insured under the terms of the Accelerant CGL Policy and the Excess Policy;
3. Accelerant owes a duty to defend and indemnify M&R in the [Yunga] Action on a primary and non-contributory basis under the CGL Policy and the Excess Policy; and
4. A declaration that Accelerant must reimburse Continental for all of the costs, expenses, and fees it has incurred in connection with Accelerant's defense in the underlying Yunga Action.

*Id*. at 12–13.

## DISCUSSION

**I.     Nature of the Present Action**

4

Accelerant's first and second claims both seek declaratory judgments that disclaim Big Apple's entitlement to coverage under the Accelerant Policies. The first claim asserts a breach of contract—that Big Apple's misrepresentations in its insurance application breached the Accelerant Policies' contractual warranties. Compl. ¶¶ 89–96. The second claim asserts fraud in the inducement of the contract—that Big Apple's misrepresentations in its insurance application permit Accelerant to rescind the Accelerant Policies. *Id*. ¶¶ 97–110. Notably, Accelerant is permitted to assert both claims in the alternate, as "the New York Court of Appeals has allowed a fraud claim to proceed in tandem with a contract claim [for breach of a contractual warranty] . . . , even though these facts were warranted in the parties' contract." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007). Although the two claims are not identical, a declaratory judgment in Accelerant's favor on either claim (or both) would have the same outcome. Accelerant would "avoid [the] insurance contract[s] [and] defeat recovery thereunder" by Big Apple. N.Y. Ins. L. § 3106; *see also id.* § 3105. In other words, Big Apple would not be entitled to defense and indemnification under the Accelerant Policies in the Underlying Actions.

Critically, a declaratory judgment in Accelerant's favor against Big Apple would impact the rights of parties who have not been joined to this litigation. All of the Underlying Actions were asserted against other co-defendants in addition to Big Apple, and many of those co-defendants seek coverage from Accelerant as additional insureds under the Accelerant Policies. Compl. ¶¶ 52–88. If those putative additional insureds are entitled to defense and indemnity under the Accelerant Policies, then their respective insurance companies would also be entitled to contribution from Accelerant toward their defense and indemnification expenses. *See* Ex. E, CGL Policy at 24 (CGL Policy provisions on contribution and priority of coverage as to other

5

insurance policies); *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 209 (2d Cir. 2000) (noting that it is an "undisputed principle that a paying insurer can recover from a non-paying insurer").

Potentially limiting this coverage, the New York Court of Appeals has held that "'additional' insureds, by definition, must exist in addition to *something*; namely the named insureds in a valid existing policy." *Admiral Ins. Co. v. Joy Contractors, Inc.*, 19 N.Y.3d 448, 461 (2012) (emphasis in original). Thus, a judicial determination that the named insured's material misrepresentations permit the insurer to either (1) rescind the policy due to fraud in the inducement, or (2) void the policy "based on an express policy condition regarding fraud or misrepresentations," forecloses coverage under that policy to the named insured *and* to all additional insureds. *Id*. 461–62. As applied here, Accelerant's material misrepresentation and breach of contract claims against Big Apple, if successful, will vitiate the Accelerant Policies such that Accelerant owes no obligations to any of the co-defendants in the Underlying Actions.

## II.     Intervention as a Matter of Right

To establish intervention as of right pursuant to Rule 24(a)(2), an intervenor must show that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *XL Specialties Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). The intervenor must satisfy all four factors for its application to be granted. *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006). Accelerant concedes that the

6

motion is timely, but contends that the Intervenors have failed to demonstrate the latter three elements.

### A. Intervenors Posses an Interest in the Action

To satisfy Rule 24(a)(2)'s second requirement—that the applicant asserts an interest relating to the property or transaction that is the subject of the action—the applicant must establish an interest in the litigation that is "direct, substantial, and legally protectable." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). An interest "that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable," is insufficient. *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014).

As discussed above, the subject of this action is Accelerant's obligations under the Accelerant Policies, which Accelerant asserts are invalid due to the misrepresentations in Big Apple's insurance application. M&R seeks defense and indemnity coverage as an additional insured under the Accelerant Policies in the Yunga Action. Continental, as M&R's insurer, seeks contribution from Accelerant for the defense costs it has paid and will pay on M&R's behalf in the Yunga Action. If the Accelerant Policies are voided by a judgment in this action, then M&R's claim for defense and indemnity as an additional insured is extinguished. *See Joy Contractors*, 19 N.Y.3d at 461 (holding that additional insureds cannot claim coverage under a policy that has been rescinded or rendered void due to material misrepresentations of the named insured). Moreover, Continental will bear the entire burden of defending and indemnifying M&R, and therefore its "coverage obligations in the [Yunga] Action will necessarily be shaped by the outcome of the pending declaratory judgment action." *Golden Ins. Co. v. PCF State Restorations, Inc.*, No. 17-CV-5390, 2018 WL 10593630, at *6 (S.D.N.Y. May 11, 2018). Courts

7

in this circuit have repeatedly found that additional insureds and their insurers have a direct interest in similar circumstances. *See id*. at 5–6 (concluding that insurer of additional insured had a direct interest in policy rescission action between named insured and its insurer) (collecting cases).

Accelerant's assertion that the Intervenors' interests are "contingent on the outcome of a multiple sequence of events" is meritless. Acc. Opp. at 7. According to Accelerant, the Intervenors have no interest in the Accelerant Policies "unless (1) this Court determines Accelerant cannot rescind [those policies] . . .; (2) a court determines the underlying claim triggers coverage under the Policies in the first instance; and (3) [a court determines] (a) that M&R is an additional insured and (b) Continental's coverage for M&R is excess and non-contributing." *Id*. Notably, Accelerant ignores the consequences for Intervenors if Accelerant *prevails* against Big Apple in this action. As discussed above, the Accelerant Policies would become void, and M&R could not seek defense and indemnification from Accelerant even if it would otherwise have been an additional insured. *Joy Contractors*, 19 N.Y.3d at 461.

In any event, the Intervenors' interest depends on only one contingency: a finding that it is entitled to coverage in the Yunga Action as an additional insured. *See Rocano Gen. Constr., Inc. v. U.S. Underwriters Ins. Co.*, No. 22-CV-06293, 2024 WL 472864, at *4 (E.D.N.Y. Feb. 7, 2024) (finding intervenor's interest as an additional insured was sufficiently direct because it was contingent only on "a finding that it is an additional insured"). Accelerant cannot claim that its success or failure in the present action is a "contingency" which attenuates Intervenors' interest in this action. Moreover, Accelerant cannot separate M&R's claim for defense coverage in the Yunga Action—a single finding of liability—into two separate contingencies simply because M&R must prove two elements (that it is an additional insured and the Yunga Action triggers

8

coverage) to establish that liability. *See Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 33 A.D.3d 570, 570–71 (1st Dep't 2006) (noting that whether a party is an additional insured is simply one aspect of the ultimate question of whether that party is entitled to coverage under the policy).

Accelerant also contends that, "to establish M&R is an additional insured under the Policies, Movants would need to establish [that] the damages sought in the underlying action [are] for bodily injury caused in whole or in part by Big Apple's work." Acc. Opp. at 9. However, Accelerant is mistaken—its obligation to provide a defense to M&R does not turn on proof or a judicial determination of Big Apple's liability or causation of the injury in the Yunga Action. *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 208 (S.D.N.Y. 2023) (noting that "the duty to defend is not triggered by the final adjudication of liability"). If M&R is indeed an additional insured, then Accelerant's duty to defend M&R "is triggered by the initiation of a claim under which its insured *may* eventually be found liable," and "[i]t is sufficient that there be a 'reasonable possibility' that [the named insured]'s acts or omissions were the proximate cause of the injury." *Id.* (alterations in original, citation omitted, and emphasis added). Accordingly, Accelerant cannot contend that its duty to defend M&R requires a determination of Big Apple's liability for and causation of the injury in the underlying Yunga Action.

### B. The Intervenors' Interests Would be Impaired Absent Intervention

Rule 24(a)(2)'s third element requires the applicant to demonstrate that "disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest." *XL Specialties Ins. Co.*, 632 F. App'x at 669. Accelerant asserts that, because "Big Apple does not seek a declaration that it is the *only* insured," a resolution in Big Apple's favor

9

would not impede the Intervenors' ability to access coverage. Acc. Opp. at 14. That argument is frivolous, as it ignores the declaration that Accelerant itself seeks in this action—a declaration rescinding or voiding the Accelerant Policies due to Big Apple's misrepresentations. To reiterate, such a declaration eliminates the rights of both the named insured (Big Apple) and all additional insureds (such as M&R) to coverage under those policies. *Joy Contractors*, 19 N.Y.3d at 461. Thus, Accelerant effectively seeks a declaration that there are *no* insureds under the Accelerant Policies. Accelerant, the party that initiated the present action, cannot hide behind Big Apple's decision to seek a more limited scope of relief in its counterclaims.

Accelerant's citation to *Rocano* is inapposite. 2024 WL 472864, at *4. *Rocano* addressed a claim for coverage by an additional insured, and the intervenor claimed that it was likewise a putative additional insured entitled to coverage under the policy. *Id.* at *1. Critically, the respective rights of the additional insureds in *Rocano* did not rise and fall together, as the parties in that case did not dispute the existence of a valid insurance contract. *Id.* at *4; *see also Joy Contractors*, 19 N.Y.3d at 459 (noting that coverage under a "valid and effective" policy is determined as if the insurer "ha[d] undertaken *separate and distinct* obligations to the various [in]sureds, named and additional," in contrast to cases in which the insurer seeks to void the policy based on material misrepresentations). Thus, the *Rocano* intervenor could seek coverage under the policy regardless of whether the *Rocano* plaintiff successfully obtained a determination that it was an additional insured. By contrast, the Intervenors here cannot obtain coverage under the Accelerant Policies if Accelerant voids those policies as to Big Apple.

The Intervenors' interests would clearly be impaired absent intervention. "[T]he court is to view the effect on the intervenor's interest with a practical eye." *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 89 (S.D.N.Y. 2018) (quotation marks omitted). Even if the Intervenors are

10

not bound to a judgment in this action by res judicata or collateral estoppel, the validity of the Accelerant Policies is a precondition for any insured, named or additional, to obtain coverage under those policies. *Joy Contractors, Inc.*, 19 N.Y.3d at 461 (a policy rescinded due to misrepresentations is "deemed never to have existed to create coverage in the first place" (internal quotation marks omitted)). Critically, resolution of that question concerns a single set of issues and facts—Big Apple's alleged misrepresentations and Accelerant's reliance on those misrepresentations. A declaration that the Accelerant Policies are void in this action would therefore make it difficult for M&R and Continental to claim in a separate action that the Accelerant Policies are not void. *See Golden Ins. Co.*, 2018 WL 10593630, at *6 (holding that, while proposed intervenor would not be bound by *res judicata*, its interests were nonetheless impaired because it would have difficulty obtaining favorable rulings on rescission of the policy in subsequent litigation against named party).

      C.      **Intervenors Do Not Share the Same Ultimate Objective as Big Apple**

Fourth, and finally, Rule 24(a)(2) requires the applicant to establish that its interest "is not adequately represented by the [present] parties," *XL Specialties Ins. Co.*, 632 F. App'x at 669. Accelerant contends that Intervenors have failed to establish that element, as Big Apple shares Intervenors' interest in avoiding rescission of the Accelerant Policies.

Although "the burden to demonstrate inadequacy of representation is generally speaking 'minimal,'" a "more rigorous showing of inadequacy" is required "where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). "Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id*. at 179–80.

11

I agree with Accelerant that Intervenors desire the same outcome as Big Apple with respect to Accelerant's claims seeking to invalidate the Accelerant Policies. M&R may only seek coverage as an additional insured if those policies remain valid, and therefore Intervenors' claims are "predicated upon a favorable result for [Big Apple] on the claims" asserted by Accelerant. *Id.* at 180. Big Apple has obvious reasons to vigorously litigate Accelerant's claims for rescission, as no coverage will be available to it under the Accelerant Policies should Accelerant prevail. However, the fact that Intervenors and Big Apple desire the same *outcome* as to the validity of the Accelerant Policies does not mean that Big Apple adequately represents Intervenors' *interests*.

The Second Circuit has explained, in circumstances identical to those here, that a named insured defending against a policy rescission does *not* represent the interests of an additional insured. *See Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 71 (2d Cir. 2020). *McElhatton* involved an action brought by an insurer against its named insured, seeking to void the parties' insurance policy based on the named insured's misrepresentations. *Id*. at 69. The additional insured's insurer sought to intervene, seeking coverage on behalf of that additional insured. *Id*. Although the Second Circuit ultimately affirmed the denial of intervention as untimely, it noted that, "from the outset" of the litigation, the named insurer did not represent the *interests* of the additional insured. *Id*. at 71. Although both the named and additional insureds "wanted the [p]olicy to be upheld, their *interests* for seeking such an outcome were distinct." *Id*. (emphasis in original). The named insured sought "to uphold the [p]olicy to protect itself from potential liability," whereas the additional insured sought "to establish [the named insureds] liability for the [underlying action] and pursue a right of contribution under the Policy." *Id*. The Second Circuit emphasized that "it would be strange indeed for the law to require [the additional

12

insured] to rely on a third party to protect its interests when that same party may cause [the additional insured] to pay . . . damages." *Id.*

*McElhatton* is precisely analogous to the present circumstances. Accelerant seeks to deny coverage to Big Apple, the named insured, by rescinding the Accelerant Policies, and the additional insured and its insurer seek to intervene in this rescission action. I therefore conclude that Big Apple does not adequately represent the Intervenors' interests. Since Intervenors have satisfied the four requirements for intervention as a matter of right, I GRANT Intervenors permission to intervene.

### III. Permissive Intervention

Even if Intervenors were not entitled to intervention as of right, I would nonetheless grant permissive intervention. "When evaluating a motion to intervene, a district court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *Harris-Clemons v. Charly Acquisitions, Ltd.*, 642 Fed. App'x 17, 21 (2d Cir. 2016). "Having taken into account all of the factors discussed above[,] as well as the overarching considerations of economy and efficiency that undergird both mandatory and permissive intervention," *Golden Ins. Co.*, 2018 WL 10593630, at *7, I conclude that Intervenors should be permitted to permissibly intervene under Rule 24(b). Intervenors' proposed claims against Accelerant clearly "share with the main action common questions o[f] law or fact," *id.* (quotation marks omitted and alterations adopted), as M&R cannot claim it is an additional insured under the Accelerant Policies unless those policies remain valid. That question is the entire basis for this action, and will necessarily be addressed whether Intervenors are present or not. *Id.* at 7–8 (permitting intervention by additional insured's insurer in rescission action between named insured and its insurer). Intervenor's additional claims do not

13

outweigh the common claims, as those additional claims will necessarily fail if the Accelerant prevails in voiding the Accelerant Policies. *Id*.

I have also considered whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights," as required by Rule 24(b)(3), and conclude that it will not. "To the contrary: permitting intervention will promote efficiency, because any judgment as to the validity and/or coverage of the [Accelerant Policies] rendered by this Court after intervention will be *res judicata* as to [Intervenors]." *Golden Ins. Co.*, 2018 WL 10593630, at *8. By making the present action binding upon the Intervenors, I will avoid relitigation of the Accelerant Policies in the state court M&R Declaratory Action,[2] which will require Accelerant, Big Apple, and Intervenors to present substantially the same evidence and arguments in another forum. Intervention would also prevent inconsistent judgments, which would occur if the State Court disagrees with me regarding the validity of the Accelerant Policies. Finally, I reject Accelerant's assertion that granting Intervenors' motion would "open the door to a flood of other would-be intervenors"—the putative additional insureds in the other Underlying Actions against Big Apple. Acc. Opp. at 15. At present, that concern is speculative. In any event, I may resolve that issue by staying the claims for additional insured coverage until the parties have resolved the validity of the Accelerant Policies.

I therefore GRANT Intervenors' motion to intervene.

**IV.    Accelerant's Remaining Arguments**

Accelerant lodges several other objections to the Intervenors' motion. All of them are meritless.

---

[2] Intervenors have represented that they will dismiss the M&R Declaratory Action if permitted to intervene and thereby consolidate their claims in the federal proceeding. Intervenor's Rep. at 7.

14

### A. Standing

Accelerant contends that the Intervenors lack standing to challenge the existence of the insurance contract between Accelerant and Big Apple "because there is no declaration that M&R is an additional insured under the [Accelerant] Policies." Acc. Opp. at 3. However, "the Second Circuit has held that when the existence of a case or controversy has already been established as between the original parties to a case, there is no need to impose an independent standing requirement on the proposed intervenor." *Am. Empire Surplus Lines Ins. Co. v. Disano Demolition Co.*, No. 18-CV-5047, 2020 WL 7211286, at *5 (E.D.N.Y. Nov. 12, 2020) (citing *United States Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978)). A party seeking to intervene need only demonstrate an interest that satisfies the standards for intervention under Rule 24(a)(2). *Id*.

In any event, Intervenors plainly have standing. Accelerant's argument that M&R must obtain a judicial declaration that it is an additional insured under the Accelerant Policies before it may assert a claim for coverage as an additional insured is tautological. Since the validity of the Accelerant Policies is an element of M&R's claim for coverage under those policies, and Accelerant has denied coverage to M&R in the Yunga Action on that basis, Intervenors have demonstrated Article III standing to challenge Accelerant's rescission of the policies.

### B. Failure to Comply with Rule 24(c)

Accelerant also asserts that intervention should be denied because Intervenors have failed to comply with Rule 24(c), which requires a motion for intervention to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

Although Intervenors have failed to file a separate pleading setting forth their claims, their failure to do so is not fatal. "Courts within the Second Circuit have held that Rule 24(c) permits a 'degree of flexibility with technical requirements' and have dispensed with the pleading requirement when the proposed intervenors position is 'clearly articulated' in its motion papers." *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05-MD-1720, 2021 WL 2646349, at *13 (E.D.N.Y. June 28, 2021) (citation omitted) (collecting cases). Here, Intervenors have clearly articulated their claims and the relief sought. Mot. at 12–13. In addition to a determination of whether Accelerant's rescission of the Accelerant Policies was proper—the same claim asserted by Accelerant in its complaint—Intervenors request three declarations: that M&R is an additional insured under those policies, that Accelerant owes a duty to defend and indemnify M&R in the Yunga Action, and that Accelerant must reimburse Continental for Accelerant's portion of the fees advanced to M&R in that action. *Id*. Furthermore, Intervenors have attached a copy of their complaint in the M&R Declaratory Action against Accelerant, which seeks identical relief to Intervenors' proposed counterclaims here. Ex. H – State Court Pleadings, ECF No. 22-9.

Because Accelerant has failed to explain how Intervenors' failure to file a pleading with their motions has deprived it of sufficient notice, or otherwise prejudiced its position, I waive the pleading requirement. See *Barry's Cut Rate Stores Inc.*, 2021 WL 2646349, at *13; *see also Conn. Fine Wine & Spirits, LLC v. Harris*, No. 16-CV-1434, 2016 WL 9967919, at *4 (D. Conn. Nov. 8, 2016) (concluding that "the movants' failure to file a 'pleading' with their [m]otions is not fatal to their efforts to intervene" because the motions put the plaintiffs "sufficiently on notice as to their interests and positions in the case").

**C.     Abstention**

16

Finally, Accelerant contends that I should deny intervention under the *Colorado River* abstention doctrine due to Intervenors' initiation of the M&R Declaratory Action, in which Intervenors seek substantially the same relief they propose to assert in this action. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Accelerant's argument is meritless. *Colorado River* abstention permits a federal court, in "certain other 'exceptional circumstances'" to "abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colo. River*, 424 U.S. at 817–18). *Colorado River* permits courts to dismiss, or to stay, an *existing* federal action based on the parallel state-court litigation. *Addison Cent. Sch. Dist. v. Monsanto Co.*, No. 2:23-CV-00164, 2024 WL 4100279, at *4 (D. Vt. Sept. 6, 2024), *mot. to cert. appeal denied*, 2025 WL 26762 (D. Vt. Jan. 3, 2025). The doctrine does not address abstention from jurisdiction over a proposed intervenor's claims. The principles of judicial economy underlying the doctrine are especially inapplicable where, as here, the intervenors initiated the parallel state litigation and have represented that they will dismiss it to consolidate their claims in the federal proceeding. Intervenor's Rep. at 7.

To whatever extent that there exists a threat of duplicative litigation, that result is caused by Accelerant's initiation of this federal case. M&R's entitlement to coverage under the Accelerant Policies depends on a court finding of the validity of those policies. That question necessarily requires resolution of whether Accelerant properly voided or rescinded those policies, *i.e.* the claims asserted by Accelerant in this action. *See Joy Contractors*, 19 N.Y.3d at 461. Thus, if the claims that M&R intends to assert upon intervention are parallel to the claims in the M&R

17

Declaratory Action, then the M&R Declaratory Action is also parallel to Accelerant's claims here, as both Accelerant and Big Apple are parties to the M&R Declaratory Action. If *Colorado River* abstention applied here, then I would be required to dismiss *this case in its entirety*.[3] Accelerant surely does not intend that result by raising abstention.

### V.     Limitations on Intervenors' Claims

My decision to permit intervention is not unlimited, however. Intervenors seek a declaration that Accelerant owes a duty to defend *and* indemnify M&R in the Yunga Action, Mot. at 12–13. Although I will exercise jurisdiction over M&R's claim for defense coverage under the Accelerant Policies, I decline to exercise jurisdiction under the Declaratory Judgment Act ("DJA") over M&R's claim for indemnification. "[T]he DJA provides only that federal courts '*may* declare the rights and other legal relations of an[] interested party' . . .—not that they *must* so declare." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (emphasis in original) (quoting 28 U.S.C. § 2201(a)). As the Second Circuit has explained, "even in circumstances when a declaratory judgment would serve a useful purpose in clarifying and settling the legal relations in issue," "district courts retain broad discretion to decline jurisdiction under the DJA." *Id.* at 99 (quotation marks and citations omitted and alterations adopted).

An insurer's duty to defend an additional insured is "triggered by the initiation of a claim under which its insured may eventually be found liable." *Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d at 208. It is not contingent upon a liability finding. By contrast, an insurer's duty to

---

[3] "[A]bsolute congruency is not necessary to support a finding of Colorado River parallelism," *Pabco Constr. Corp. v. Allegheny Millwork PBT*, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013), and "perfect symmetry of parties and issues is not required." *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013) (citation omitted). Instead, a court must focus on the "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (citation omitted).

indemnify is triggered only if the additional insured is ultimately found liable. *Id.* Courts in this circuit have regularly declined to exercise jurisdiction over declaratory judgment actions seeking indemnification where liability has not yet been determined, as "ruling on indemnity would encroach on the state court's jurisdiction to determine liability for the state law claims underlying [the] action and potentially create *res judicata* issues." *Id.* The Yunga Action is currently pending and M&R's liability has not yet been resolved in that action. Indeed, Intervenors themselves acknowledge that I cannot resolve indemnification questions at this stage, and represent that they "intend to request a stay of this action pending [resolution of liability] . . . issues[s] in the Yunga Action." Intervenor's Rep. at 4 n.2. I therefore deny the Intervenors permission to assert their claims for indemnification without prejudice as to its renewal if liability is established in the Yunga Action.

## CONCLUSION

In sum, I GRANT Intervenors' motion to intervene and to assert their proposed counterclaims against Accelerant, with the exception of any claims seeking indemnification. Intervenors are directed to file a pleading responding to Accelerant's complaint and setting forth their counterclaims in accordance with this order.

SO ORDERED.

                                                          /s/
                                              Allyne R. Ross
                                              United States District Judge

Dated:             August 06, 2025
                    Brooklyn, New York